# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| **SAMUEL REECE,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 4:03CV219CEJ/MLM** |
| | ) | |
| **DAVID DORMIRE,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## REPORT AND RECOMMENDATION OF
## UNITED STATES MAGISTRATE JUDGE

This matter is before the court on the Petition for Writ of Habeas Corpus filed by Samuel Reece ("Petitioner") filed pursuant to 28 U.S.C. § 2254. See Doc. 4. Respondent filed a Response to Order to Show Cause Why a Writ of Habeas Corpus Should Not Be Granted. See Doc. 6. Petitioner is currently incarcerated in the Jefferson City Correctional Facility. Respondent, as the superintendent of that institution is, therefore, the proper party respondent. This matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1). See Doc. 5.

## I.
## BACKGROUND

On August 27, 1996, an indictment issued in the City of St. Louis, Missouri, charging Plaintiff as follows: Count I, murder in the first degree in violation of Mo. Rev. Stat. § 565.020, in that on June 9, 1995, Petitioner and Latorrence Nelson, after deliberation, knowingly caused the death of John Griffith by shooting him, and Count II, armed criminal action in violation of Mo. Rev. Stat. § 571.015, in that on June 9, 1995, Petitioner and Latorrence Nelson committed the felony of murder first degree charged in Count I by, with, and through the use, assistance, and aid of a deadly weapon. Petitioner was charged as a prior and persistent offender in that he plead guilty to the

following felonies: on April 17, 1991, Petitioner plead guilty to the felony of unlawful use of a weapon; on April 17, 1991, Petitioner plead guilty to the felony of possession of cocaine; on December 1, 1988, Petitioner plead guilty to the felony of "attempt stealing" of a motor vehicle; and on December 1, 1988, Petitioner plead guilty to the felony of tampering first degree.  See Resp. Ex. B at 7-8.

At Petitioner's trial, Rennell Randle testified that on the evening of June 8, 1995, he drove his friend John Tyrone Griffin to the Darst-Webbe Peabody Projects so Griffin could visit his grandmother.  See Resp. Ex. A-3, Trial Transcript ("Tr.") at 556-57.  As they were driving in the projects, Randle saw Petitioner and asked  Griffin, "what's up?"  Griffith responded, "I got it" and then got out of the car and began speaking with Petitioner.  Id. at 557.  At first it did not sound like an argument and then all of a sudden Randle saw Petitioner hit Griffin "and they got into a fight." Id. at 558.   Petitioner hit Griffin first and hit him in the jaw.  The fight lasted no more than "three, four minutes at most" and Randle broke it up.  Id.  After the fight Griffin "was dazed and his nose was busted." Id. at 558-59.

Regina Norise, Griffin's girlfriend, testified that the next day, June 9, 1995, Griffin, who lived in an apartment on Jefferson and Shenandoah, again went out with Randle.  In the later afternoon, while Griffin was still gone, Norise was outside the apartment speaking with her nephew, when a four-door blue car passed by very slowly.  Petitioner was driving the car and there were two other people in the car, one in the passenger seat and one in the back seat.  See id. at 478-79, 482--83.  The person in the passenger seat and the person in the back seat had hats pulled down on their faces.  The car slowed down and Norise saw Petitioner give her a "hard stare." Id. at 483.  Five minutes later, Griffin pulled up with Randle.  Randle stayed and talked for a minute and then Griffin went in the house and ate.  About twenty or thirty minutes later, after his meal, Griffin went out on

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

the porch and then crossed the street walking down Shenandoah towards Indiana Street, which was visible from Norise's apartment. See id. at 478, 484-86.

Norise also testified that she saw the shooting from the back porch of her apartment. She testified that when Griffin went to turn the corner a shot was fired; Griffin turned around and ran back toward her. She saw the faces of the shooters and identified one as the same person who was the driver of the blue car, Petitioner. See Resp. Ex. A-3, Tr. at 491-92. After calling the police, Norise came outside and found Griffin, who was dead, lying on the ground next to a brown van parked on the curb. See id. at 493.

Brenda Taylor testified that at about that time she was vacuuming her house at 2268 Indiana, which is the second house from the corner of Shenandoah and Indiana. Looking out of her living room window, she saw a yellow four-door wagon pull up and abruptly stop. See Resp. Ex. A-2, Tr. at 364, 366-69. Petitioner and another man (later identified as Latorrence Nelson) got out of the front passenger seat and back seat of the car, pulling guns from the back of their pants as they walked across the street. See id. at 366, 369. Once the two men exited the car, the driver went towards Ann Street. See id. at 369. Petitioner and Nelson stood up beside the brick house across the street, each holding a gun in front of his crouch. Petitioner had a stocky build, was not as dark as Nelson, and was wearing a white t-shirt and dark tennis shoes. See id. at 372. Taylor had seen Petitioner and Nelson before although she did not know them by name. At trial she identified Petitioner as the stocky man she had seen that day. See id. at 372.

Taylor further testified that when she saw the guns she called 911 and that before she could get her words out she heard shooting. She was "steady looking out the window" and saw a third man get to the corner. As he got to the corner, Petitioner and Nelson "stepped around in front of him and started shooting him." Id. at 375. Petitioner and Griffin were face to face, closer than an

3

arm's length apart; Griffin's "mouth went wide open and his eyes just bugged"; and he turned and ran the same way he had come, back west on Shenandoah. Id. at 376, 491. Nelson ran after Griffin firing the gun and Petitioner stayed on the corner and continued to fire the gun. See id. at 376-77.

Taylor testified that when the shooting ended Petitioner and Nelson came back to Indiana Street and ran towards Ann Street, the next cross street. Petitioner pulled his shirt off and wrapped the gun in it. See Resp. Ex. A-2, Tr. at 378, 392, 410.

Antonio Wright testified that he heard five or six gun shots when he was playing basketball; that he looked to see where they were coming from; that he could see Petitioner and Nelson shooting; that he could not see Griffin; and that Petitioner and Nelson ran past him. See id. at 339-41.

Homicide Detective Ralph Campbell testified that he was in charge of the investigation of Griffin's murder; that he interviewed Norise on the night of the murder; and that she identified one of the shooters as Petitioner, whom she knew as "Chino," although she did not know his real name. See Resp. Ex. A-3, Tr. at 614. Through computer checks Detective Campbell determined that Chino is Petitioner's nickname. See id. Norise identified Petitioner in a lineup and in a photo array. See id. at 622, 627.

Petitioner did not testify at his trial. Nelson did testify and presented alibi witnesses. A jury found Petitioner guilty of first degree murder and armed criminal action and assessed punishment at life imprisonment without probation or parole and life imprisonment respectively. The trial court found Petitioner to be a prior and persistent offender and sentenced him to life without the possibility of probation or parole for the first degree murder conviction and to a concurrent term of ten years for the armed criminal action conviction. The jury returned a hung verdict in regard to Nelson.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Petitioner filed a direct appeal in which he raised the following issues: the trial court erred in failing to grant a mistrial because the jury found Petitioner guilty but did not find Nelson guilty of the same crimes; the trial court erred because it did not grant Petitioner's motion for a judgment of acquittal at the close of the State's evidence; the trial court erred in failing to grant a mistrial after the prosecutor made a comment on Petitioner's failure to testify; the trial court abused its discretion in admitting evidence of a prior assault involving Petitioner and Griffin; and the trial court plainly erred when it entered a corrected written sentence and judgment finding Petitioner to be a prior and persistent offender. See Resp. Ex. C. By Order dated February 9, 1999, the Missouri appellate court remanded Petitioner's case to the trial court for nunc pro tunc correction of its written judgment to remove any reference that Petitioner is a prior and persistent offender. The Missouri appellate court otherwise affirmed the judgment against Petitioner. See Resp. Ex. E.

On May 25, 1998, Petitioner filed a Motion to Set Aside or Correct the Judgment or Sentence pursuant to Rule 29.15. See Resp. Ex. F at 2. The motion court appointed counsel and a First Amended Rule 29.15 motion was filed. See id. at 12, 16-63. The motion court denied Petitioner's post-conviction relief motion. See id. at 65-70. Petitioner filed an appeal in which he raised the following issue: Petitioner received ineffective assistance of counsel because his trial counsel failed to object to jury instruction #10, the verdict director for murder in the first degree, because it varied from the indictment under which Petitioner was charged. See Resp. Ex. G. By Order dated January 29, 2002, the Missouri appellate court denied Petitioner's appeal of his post-conviction relief motion. See Resp. Ex. I.

On February 21, 2003, Petitioner filed his § 2254 Petition in which he raises the following issues:

**(1)** The trial court erred in failing to declare a mistrial after the jury convicted Petitioner and did not reach a verdict as to Petitioner's co-defendant;

5

**(2)** The trial court erred in failing to declare a mistrial after the prosecutor made references to Petitioner's failure to testify during closing argument;

**(3)** Petitioner received ineffective assistance of trial counsel because his trial counsel failed to object to the submission of jury instruction #10 which varied from the indictment.

**(4)** The motion court erred in denying Petitioner's post-conviction relief motion without a hearing regarding the issue raised in Ground 3, above.

Doc. 4 at 5-6.

### III.
### EXHAUSTION and DEFAULT ANALYSIS

To preserve issues for federal habeas review, a state prisoner must fairly present his or her claims to state courts during direct appeal or in post-conviction proceedings. See Sweet v. Delo, 125 F.3d 1144, 1149 (8th Cir. 1997) (Sweet). Failure to raise a claim in a post-conviction appeal is an abandonment of a claim. See id. at 1150 (citing Reese v. Delo, 94 F.3d 1177, 1181 (8th Cir. 1996)). A state prisoner who fails "'to follow applicable state procedural rules [for] raising claims' (citation omitted) . . . , is procedurally barred from raising them in a federal habeas action, regardless of whether he has exhausted his state-court remedies." Id. at 1151 (citing Coleman v. Thompson, 501 U.S. 722, 731-32 (1991) (Coleman)). "[A] prisoner must 'fairly present' not only the facts, but also the substance of his federal habeas claim." Abdullah v. Groose, 75 F.3d 408, 411 (8th Cir. 1996) (en banc) (citation omitted). "[F]airly present" means that state prisoners are "'required to refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue.'" Id. at 411-12. A state-law claim which is raised in state court which "is merely similar to the federal habeas claim is insufficient to satisfy the fairly presented requirement." Id.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

A state prisoner can overcome procedural default if he or she can demonstrate cause for the default and actual prejudice or demonstrate that default will result in a fundamental miscarriage-of-justice. See Coleman, 501 U.S. at 750-51. See also Battle v. Delo, 19 F.3d 1547, 1552 (8th Cir. 1997). "A habeas petitioner who wishes to have a procedurally defaulted claim [considered] on its merits now 'must show by clear and convincing evidence that but for a constitutional error, no reasonable juror would have found the petitioner [guilty] under the applicable state law.'" McCoy v. Lockhart, 969 F.2d 649, 650 (8th Cir. 1992 ) (citing Sawyer v. Whitley, 505 U.S. 333 (1992)). Actual innocence is required to meet the miscarriage-of-justice exception to the procedural requirements described above. See Sweet, 125 F.3d at 1152 (citing Schlep v. Delo, 513 U.S. 298, 316 (1995)). Indeed, a "'bare, conclusory assertion' that a petitioner is actually innocent is insufficient to excuse a procedural default." Id. (citing Weeks v. Bowersox, 119 F.3d 1342, 1352-55 (8th Cir. 1997)).

Prior to considering the merits of a state petitioner's habeas claim, a federal court must determine whether the federal constitutional dimensions of the petitioner's claims were fairly presented to the state court. See Smittie v. Lockhart, 843 F.2d 295, 296 (8th Cir. 1988) (Smittie). "If not, the federal court must determine if the exhaustion requirement has nonetheless been met because there are 'no currently available, non-futile remedies,' through which the petitioner can present his claim." Id. (citation omitted).

However, "only a 'firmly established and regularly followed state practice' will bar federal court review." Clark v. Caspari, 274 F.3d 507, 510 (8th Cir. 2001) (Clark) (quoting Ford v. Georgia, 498 U.S. 411, 423-24 (1991)). In Randolph v. Kemna, 276 F.3d 401, 404 (8th Cir. 2002) (Randolph), the Eighth Circuit held that the law of Missouri does not require "prisoners to pursue discretionary review by petitioning for transfer to the Missouri Supreme Court." The Eighth Circuit

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

concluded, in <u>Randolph</u>, that a state prisoner, seeking federal habeas review, need not seek transfer to the Missouri Supreme Court. <u>See</u> <u>id.</u> at 405.

In <u>Duncan v Walker</u>, 533 U.S. 167, 178-79 (2001) (<u>Duncan</u>), the United States Supreme Court held that "[t]he exhaustion requirement of § 2254(b) ensures that the state courts have the opportunity to fully consider federal-law challenges to state custodial judgment before the lower federal courts may entertain a collateral attack upon that judgment." <u>See</u> <u>e.g.</u>, <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999) (<u>O'Sullivan</u>); <u>Rose v. Lundy</u>, 455 U.S. 509, 518-19 (1982) (<u>Rose</u>). The Court further stated that "[t]his requirement 'is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings.'" <u>Duncan</u>, 533 U.S. at 179 (citing <u>Rose</u>, 455 U.S. at 518). "The exhaustion rule promotes comity in that 'it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation.' " <u>Id</u>. (quoting <u>Rose</u>, 455 U.S. at 518) (quoting <u>Darr v. Burford</u>, 339 U.S. 200, 204 (1950)). As stated by the Court in <u>O'Sullivan</u>, 526 U.S. at 844, "[c]omity thus dictates that when a prisoner alleges that his continued confinement for a state court conviction violates federal law, the state courts should have the first opportunity to review this claim and provide any necessary relief." The Court in <u>Duncan</u> further acknowledged that the exhaustion requirement is designed to reduce the risk of piecemeal litigation. <u>See</u> 533 U.S. at 180. Thus, "'strict enforcement of the exhaustion requirement will encourage habeas petitioners to exhaust all of their claims in state court and to present the federal court with a single habeas petition.'" <u>Id.</u> (quoting <u>Rose</u>, 455 U.S. at 520).

Additionally, § 2244(d)(1) establishes a 1-year limitation period on petitions filed pursuant to § 2254. The Court, in <u>Duncan</u>, recognized the need to reconcile the tolling provision of § 2244(d)(2) with the exhaustion requirement of § 2254(b). The Court held that:

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Section 2254(d)(2) promotes the exhaustion of state remedies by protecting a state prisoner's ability later to apply for federal habeas relief while state remedies are being pursued. At the same time, the provision limits the harm to the interest in finality by according tolling effect only to "properly filed application[s] for State post-conviction or other collateral review."

Duncan, 533 U.S. at 179-80.

The court finds, and Respondent acknowledges, that Petitioner has exhausted his State remedies; that he has not procedurally defaulted the issues which he raises before this court; and that his Petition is timely filed.

## III.
## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 ("AEDPA"), applies to all petitions for habeas relief filed by state prisoners after this statute's effective date of April 24, 1996. See Lindh v. Murphy, 521 U.S. 320, 326-27 (1997). Petitioner's § 2254 petition was received by this court on June 2, 1999, and, therefore, the AEDPA standards apply to his petition for writ of habeas corpus.

In Williams v. Taylor, 529 U.S. 363, 412-13 (2000) (Williams), the United States Supreme Court set forth the requirements for federal courts to grant writs of habeas corpus to state prisoners under § 2254. The Court held that "§2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application with respect to claims adjudicated on the merits in the state court." Id. at 412. The Court further held that the writ of habeas corpus may issue only if the state-court adjudication resulted in a decision that:

(1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal Law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams, 529 U.S. 412-13.

Williams further holds that the writ will not issue merely because the federal court concludes that the relevant state-court decision erroneously or incorrectly applied clearly established federal law. See id. at 411. "Rather the application [by the state-court] must also be unreasonable." Copeland v. Washington, 232 F.3d 969, 973 (8th Cir. 2000), (Copeland), cert. denied, 532 U.S. 1024 (2001). See also, Siers v. Weber, 259 F.3d 969, 973 (8th Cir. 2001), cert. denied, U.S. 1138 (2002).

The Court further explained in Williams that for a state-court decision to satisfy the "contrary to" prong of § 2254(d)(1), the state court must apply a rule that "contradicts the governing law as set forth in [Supreme Court] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Court's] precedent." Id. at 406. See also Price v. Vincent, 538 U.S. 634. 640 (2003). It is not necessary for a state court decision to cite, or even be aware of, applicable federal law, as long as the state court's decision is not contrary to such law. See Early v. Packer, 537 U.S. 3, 8 (2002) (Early).

For a state-court decision to satisfy the "unreasonable application of" prong of § 2254(d)(1), the state court decision must "identif[y] the correct governing legal rule from [Supreme Court] cases but unreasonably appl[y] it to the facts of the particular state prisoner's case" or "unreasonably [extend] a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably [refuse] to extend that principle to a new context where it should apply." Williams, 529 U.S. at 413. See also Perry v. Johnson, 532 U.S. 782, 792-93 (2001). Upon

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

explaining § 2254's legal standard, the Supreme Court held in <u>Perry</u> that "even if the federal habeas court concludes that the state court decision applied clearly established federal law incorrectly, relief is appropriate only if that application is also objectively unreasonable." <u>Id.</u> at 793. The Eighth Circuit has held that "[t]o the extent that 'inferior' federal courts [including the Eighth Circuit] have decided factually similar cases, reference to those decisions is appropriate in assessing the reasonableness of the state court's resolution of the disputed issue." <u>Atley v. Ault</u>, 191 F.3d 865, 871(8th Cir. 1999).

Additionally, § 2254(d)(2) provides that an application for writ of habeas corpus should not be granted unless the adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." Further, pursuant to § 2254(e)(1), "[a] state court's determination on the merits of a factual issue is entitled to a presumption of correctness." <u>Boyd v. Minnesota</u>, 274 F.3d 497, 500 (8th Cir. 2001) (<u>Boyd</u>). The state court's decision "must be rebutted by clear and convincing evidence." <u>King v. Kemna</u>, 266 F.3d 816, 822 (8th Cir. 2001) (<u>King</u>), <u>cert. denied</u>, 535 U.S. 934 (2002). For purposes of federal habeas relief, the state court decision involves an unreasonable determination of the facts in light of the evidence presented in state court proceedings only if it is shown by clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record. <u>See</u> <u>Lomholt v. Iowa</u>, 327 F.3d 748, 752 (8th Cir. 2003).

The United States Supreme Court has recently defined the circumstances under which a state court reasonably applies federal law as follows:

> At the same time, the range of reasonable judgment can depend in part on the nature of the relevant rule. If a legal rule is specific, the range may be narrow. Applications of the rule may be plainly correct or incorrect. Other rules are more general, and their meaning must emerge in application over the course of time. Applying a general standard to a specific case can demand a substantial element of judgment. As a result, evaluating whether a rule

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations. Cf. Wright v. West, 505 U.S. 277, 308-309, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992) (KENNEDY, J., concurring in judgment).

Yarborough v. Alvarado, 124 S.Ct. 2140, 2149 (2004) (Yarborough).

The Eighth Circuit has addressed the issue of how to determine whether a state court has addressed a claim on its merits so that the AEDPA standard of review applies. See Brown v. Leubbers, 371 F.3d 458 (8th Cir. 2004), cert. denied, 123 S.Ct. 1397 (Feb. 28, 2005). The court held in Brown that:

> From the plain language of the statute and black-letter law, we know that the state court's decision must be a judgment--an adjudication--on a substantive issue--the merits (as compared with a procedural or technical point). A survey of opinions from our sister circuits demonstrates that, beyond these two considerations, resolving the question is not so easy. One thing is clear--no court has established bright-line rules about how much a state court must say or the language it must use to compel a § 2254 court's conclusion that the state court has adjudicated a claim on the merits. That is as it should be, given one court's difficulty in divining the thought processes of another based only on language being used in certain ways, not to mention the comity issues that would be raised. Cf. Coleman v. Thompson, 501 U.S. 722, 739, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) (noting in discussion of procedural default in state habeas cases that the Court has "no power to tell state courts how they must write their opinions" so that reviewing "federal courts might not be bothered with reviewing state law and the record in the case"). We must simply look at what a state court has said, case by case, and determine whether the federal constitutional claim was considered and rejected by that court.

Id. at 461.

Even where the bulk of a state court decision is "devoted to the state-law evidentiary question and whether 'the trial court abused its discretion' in excluding [evidence]," the Eighth Circuit has held that the "'summary nature' of the discussion of the federal constitutional question does not preclude application of the AEDPA standard." Id. at 462 (citing James v. Bowersox, 187

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

F.3d 866, 869 (8th Cir.1999). The court further held in <u>Brown</u> that it "is not to say that citation to law and a key word from the application of that law--or anything else--is required for us to determine that the claim was adjudicated on the merits. We only hold that they suffice in this case for us to conclude that the Missouri Supreme Court's decision on this claim was an adjudication on the merits." <u>Id.</u>

Where a federal constitutional question, however, is not adjudicated on its merits in state court proceedings, it is not appropriate for a federal court to apply the standard of § 2254 as amended by the AEDPA, "because there is no apparent state-court adjudication to which" this standard can be applied. <u>Brown v. Luebbers</u>, 344 F.3d 770, 785 (8th Cir. 2003), <u>rev'd on other grounds</u>, 2004 WL 1315842 at *2 (8th Cir. June 15, 2004) (<u>Brown</u>), (citing <u>Robinson v. Crist</u>, 278 F.3d 862, 865 (8th Cir. 2002) ("[B]ecause this claim apparently was not adjudicated by the [state] court, we likely should apply the pre-AEDPA standard of review.")).

**V.**

**STANDARD FOR EFFECTIVE ASSISTANCE OF COUNSEL**

Federal law provides that to prove ineffective assistance of counsel, a habeas petitioner must show that: "(1) his counsel so grievously erred as to not function as the counsel guaranteed by the Sixth Amendment; and (2) his counsel's deficient performance prejudiced his defense." <u>Auman v. United States</u>, 67 F.3d 157, 162 (8th Cir. 1995) (citing <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984) (<u>Strickland</u>)). The "performance" prong of <u>Strickland</u> requires a showing that "counsel's representation fell below an objective standard of reasonableness." <u>Strickland</u>, 466 U.S. at 688. Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." <u>Id.</u> at 690. To overcome this presumption, a petitioner must prove that, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." <u>Id.</u>

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Even if a petitioner satisfies the performance component of the analysis, he is not entitled to relief unless he can prove sufficient prejudice. Id. at 694. To do so, a petitioner must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. The court is not required to "address both components of the [effective assistance of counsel] inquiry if [a petitioner] makes an insufficient showing on one [component]." Strickland, 466 U.S. at 697.

Additionally, the court notes that the Court stated in Strickland, 466 U.S. at 688-89, that:

[P]resenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. Prevailing norms of practice as reflected in the American Bar Association standards and the like, e.g., ABA Standards for Criminal Justice 4-1.1 to 4-8.6 (2d ed. 1980) ("The Defense Function"), are guides to determining what is reasonable, but they are only guides. No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant. Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions. (citation omitted). ...

Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. (citation omitted). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." (citation omitted). There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way. (citation omitted).

**IV.**

14

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

## DISCUSSION

**Ground 1 - The trial court erred in failing to declare a mistrial after the jury convicted Petitioner and did not reach a verdict as to Petitioner's co-defendant:**

In support of Ground 1 Petitioner argues that the jury's verdict was inconsistent because the jurors were instructed to find Petitioner guilty only if he acted together with Nelson in committing the charged crimes. Petitioner argued before the Missouri appellate court in support of the issue which he now raises in Ground 1 that where verdicts are inconsistent among several charges reversal is required where there is insufficient evidence to support the jury's findings of guilt. Petitioner argued that the jury instructions required the jury to find that Petitioner aided or encouraged Nelson in causing the death of Griffin; that the jury returned guilty verdicts against Petitioner and not against Nelson; that Petitioner's counsel moved for a mistrial on this basis; and that the trial court erred in not granting a mistrial.

Jury Instruction #10 stated, in relevant part:

As to Count I, if you find and believe from the evidence beyond a reasonable doubt:

First, that on June 9, 1995, ... the defendant or Latorrence Nelson caused the death of John Tyronne Griffin by shooting him, and

Second, that defendant and Latorrence Nelson knew or was aware that his conduct was practically certain to cause the death of John Tyronne Griffin, and

Third, that defendant and Latorrence Nelson did so after deliberation, ... then you are instructed that the offense of murder in the first degree has occurred, and if you further find and believe from the evidence beyond a reasonable doubt:

Fourth, that whet the purpose of promoting or furthering the death of John Tyrone Griffin the defendant aided or encouraged Latorrence Nelson in causing the death of John Tyrone Griffin and did so after deliberation, ... then you will find the defendant guilty under Count I of murder in the first degree.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of murder in the first degree.

Resp. Ex. B at 12.

While the Missouri appellate court addressed the issue raised by Petitioner in Ground 1 in a summary opinion without comment, upon considering the appeal of the motion court's denial of Petitioner's post-conviction relief motion the Missouri appellate court stated, in relevant part, as follows:

Movant argues that his counsel was ineffective for failing to object to Instruction #10, which he claims fatally varied from the indictment under which he was charged. The indictment charged Movant with first degree murder under a theory of principal liability, while the instruction advised the jury he could be found guilty if he aided or encouraged the crime under a theory of accomplice liability.

The law in this area is well established. An information may charge a defendant whether as a principal or as an aider and encourager with the same legal effect. State v. Friend, 936 S.W.2d 824, 827 (Mo. App. S.D. 1996). Moreover, the State may submit the case on a theory of accomplice liability despite charging the defendant as a principal. State v. Isa, 850 S.W.2d 876, 898 (Mo. banc 1993); State v. Levesque, 871 S.W.2d 87, 89 (Mo. App. 1994). In submitting the case on accomplice liability, the variance between information and the instruction is not fatal, because no new, separate and distinct crime is charged. State v. Hermon, 775 S.W.2d 292, 295 (Mo. App. 1989).

Therefore, no fatal variance existed and any objection by counsel to the instruction would have been nonmeritiorious.

Resp. Ex. I at 3.

Issues concerning the interpretation and application of state law are not cognizable in federal habeas review. See Poe v. Caspari, 39 F.3d 204 (8th Cir. 1994) (Poe) (holding that it is not the province of a federal habeas court to reexamine state court determinations on state law questions; petitioner's claim was based only on Missouri law and actions of Missouri officials and thus may be

16

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

addressed only by the Missouri courts); Higgins v. Smith, 991 F.2d 440, 442 (8th Cir. 1993) (holding that error in the interpretation and application of state law does not rise to the level of a constitutional violation cognizable in a federal habeas petition); Jones v. Armontrout, 953 F.2d 404, 405 (8th Cir. 1992) (Jones) (holding that an incorrect application of a Missouri statute, without more, does not establish that a prisoner is being held in violation of the laws or constitution of the United States, which is a prerequisite for relief under § 2254). In Patterson v. New York, 432 U.S. 197, 210 (1977) (Patterson), the United States Supreme Court held that state legislatures have flexibility in defining the elements of a criminal offense. Additionally, the Court has held that State legislatures may allocate burdens of proof by labeling elements of a defense as affirmative defenses or "they may convert elements into 'sentencing factor[s]." McMillan v. Pennsylvania, 477 U.S. 79, 85-86 (1986) (McMillan).

To the extent that Petitioner's Ground 1 alleges instructional error, the Supreme Court holds that instructional error is generally a matter of state law and that it only rises to the level of a constitutional issue where the instruction, by itself, so infected the trial in a manner which resulted in a violation of due process. See Estelle v. McGuire, 502 U.S. 62, 72 (1991) (Estelle) (citing Cupp v. Naughten, 414 U.S. 141, 147 (1973)); Henderson v. Kibbe, 431 U.S. 145, 154 (1977); Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974) (" '[I]t must be established not merely that the instruction is undesirable, erroneous, or even "universally condemned," but that it violated some [constitutional right]' "). The Court in Estelle further held that:

> It is well established that the instruction "may not be judged in artificial isolation," but must be considered in the context of the instructions as a whole and the trial record. Cupp v. Naughten, supra, 414 U.S., at 147, 94 S.Ct., at 400-01. In addition, in reviewing an ambiguous instruction such as the one at issue here, we inquire "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way" that violates the Constitution. Boyde v. California, 494 U.S. 370, 380, 110 S.Ct. 1190, 1198, 108 L.Ed.2d 316 (1990). And we also bear in mind our previous admonition

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

that we "have defined the category of infractions that violate 'fundamental fairness' very narrowly." Dowling v. United States, 493 U.S. 342, 352, 110 S.Ct. 668, 674, 107 L.Ed.2d 708 (1990). "Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation." Ibid.

502 U.S. at 72-73.

Moreover, instructional errors which rise to the level of constitutional violations cannot be the basis for habeas relief if they are harmless. See Seiler v. Thalacker, 101 F.3d 536, 539 (8th Cir.1996) (Seiler).

Also, under federal law a trial court has considerable discretion in formulating jury instructions. See United States v. Lopez, 384 F.2d 937, 943 (8th Cir. 2004). An appellate court will not reverse a conviction when the jury instructions given to the jury correctly stated the law. See United States v. Paul, 217 F.3d 989, 997 (8th Cir. 2000).

In regard to variances between an indictment and jury instructions, the Eighth Circuit has held as follows:

> We review claims of variances between the indictment and proof at trial to determine if the variance substantially prejudiced the defense. United States v. Ghant, 339 F.3d 660, 662 (8th Cir.2003); United States v. Stuckey, 220 F.3d 976, 981 (8th Cir.2000) (explaining that a variance only results in a reversal if the defendant's right to notice of the crimes charged has been infringed).
>
> A variance exists when the evidence at trial establishes a different set of facts than those contained in the indictment. Dunn v. United States, 442 U.S. 100, 105, 99 S.Ct. 2190, 60 L.Ed.2d 743 (1979); United States v. Koen, 31 F.3d 722, 724 (8th Cir.1994) ("A variance occurs when the charging terms are left unaltered but the evidence offered at trial proves facts different from those alleged in the indictment."). A claim of a variance alleges constitutional error, for it pertains to a defendant's Sixth Amendment right to be adequately informed of the nature of the charges. Stuckey, 220 F.3d at 981. A defendant is only entitled to relief, however, if the variance does, in fact, infringe on his substantial rights. Ghant, 339 F.3d at 662; United States v. Mora-Higuera, 269 F.3d 905, 911 (8th Cir.2001).

18

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

United States v. Cuervo, 354 F.3d 969, 988 (8th Cir. 2004), pet. for cert. filed, June 8, 2004 (No. 03-

10813).

Moreover, the United States Supreme Court has specifically held that "inconsistent verdicts are constitutionally tolerable." Dowling v. United States, 493 U.S. 342, 353-54 (1990) (citing Standefer v. United States, 447 U.S. 10, 25 (1980)). In United States v. Powell, 469 U.S. 57, 63 (1984), the Court noted that it "has on numerous occasions alluded to its rule as an established principle. Thus, in United States v. Dotterweich, 320 U.S. 277, 279, 64 S.Ct. 134, 135, 88 L.Ed. 48 (1943), the rule was invoked to support a jury verdict finding the president of a corporation guilty of introducing adulterated or misbranded drugs into interstate commerce, but acquitting the corporation of the same charge." The Court further held in Powell that "where truly inconsistent verdicts have been reached, '[t]he most that can be said ... is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt.'" 469 U.S. at 64-65 (citing Dunn v. United States, 284 U.S. 390, 393(1932)).

In the matter under consideration it cannot be said that the evidence at Petitioner's trial established a different set of facts than those contained in the indictment or that Petitioner's right to notice of the crimes with which he was charged was infringed because of any variance between the indictment and Instruction #10. See Cuervo, 354 F.3d at 988. Additionally, Petitioner has not shown that Instruction #10 did not correctly state the law. See Paul, 217 F.3d at 997. Also, Petitioner has not shown that Instruction #10 infected the trial in a manner which resulted in a violation of due process. See Estelle, 502 U.S. at 72. To the extent that Petitioner argues the jury's verdicts were inconsistent and that, therefore, there is a constitutional violation, the court notes that the jury's verdicts in regard to Petitioner and Nelson were not necessarily inconsistent. Even assuming,

19

arguendo, that the verdict against Petitioner was inconsistent with the verdict against Nelson, Petitioner has not shown that the verdicts are not constitutionally tolerable. See Dowling, 493 F.3d at 353-54. To the extent that Petitioner's Ground 1 challenges the elements of the crimes with which he was charged and/or alleges instructional error, the court finds that Petitioner's Ground 1 raises an issue concerning the interpretation and application of state law by the trial court and that, as such, it is not cognizable in federal habeas review. See Estelle, 502 U.S. at72; McMillan, 477 U.S. at 85-86; Patterson, 432 U.S. at 210; Poe, 39 F.3d at 204. To the extent that Petitioner's Ground 1 alleges that his conviction is inconsistent with Missouri law, as stated above, an incorrect application of a Missouri statute, without more, does not establish a basis for relief under § 2254. See Jones, 953 F.2d at 405.

The Missouri appellate court affirmed the judgment against Petitioner without comment.[1] As such, a-pre AEDPA standard arguably is applicable to a consideration of Petitioner's Ground 1 on its merits. See Brown, 344 F.3d at 785. As such, even assuming, arguendo, that Petitioner raises

---

[1]    Petitioner submitted the issue of Ground 1 to the Missouri appellate court pursuant to plaint error review. Authority within the Eighth Circuit is mixed in regard to whether a state prisoner can raise a claim pursuant to a § 2254 petition which has only been reviewed by the state court for plain error. The Eighth Circuit acknowledged in Hornbuckle v. Groose that "'[t]here appears to be a decisional split within our Circuit on whether plain-error review by a state appellate court waives a procedural default by a habeas petitioner, allowing collateral review by this court.'" 106 F.3d 253, 257 (8th Cir. 1997) (quoting Mack v. Caspari, 92 F.3d 637, 641 n.6 (8th Cir. 1996)). In Hornbuckle, 106 F.3d at 257, the Eighth Circuit chose to follow cases holding that where Missouri courts review procedurally defaulted claims of a habeas petitioner for plain error, the federal habeas court may likewise review for plain error. Recently, in Thomas v. Bowersox, 208 F.3d 699, 701 (8th Cir. 2000), the Eighth Circuit addressed the merits of a habeas petitioner's claim where the state court had reviewed the claim for plain error. More recently, however, in Evans v. Luebbers, No. 03-1900, 2004 WL 1277980, slip op. at 6 (8th Cir. June 10, 2004), the Eighth Circuit stated that a habeas claim was procedurally defaulted "notwithstanding the fact that the Missouri Court of Appeals reviewed the claim for plain error." Because the court finds for the reasons stated below that Petitioner's claims are without substantive merit, the court need not determine whether Petitioner's Ground 2 is procedurally barred. See also, James v. Bowersox, 187 F.3d 866, 869 (8th Cir. 1999).

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

an issue cognizable pursuant to § 2254, the court finds that Petitioner's Ground 1 is without merit. See Estelle, 502 U.S. at 72; Dowling, 493 U.S. at 353-54; Powell, 469 U.S. at 63; Cuervo, 354 F.3d at 988. Also, assuming, alternatively, that Williams is applicable to the issue raised in Petitioner's Ground 1 because of the Missouri appellate court's addressing this issue pursuant to an ineffective assistance of counsel claim, the court finds that the decision of the Missouri appellate court denying is not contrary to federal law and that it is a reasonable application of federal law. See Dowling, 493 U.S. at 353-54; Powell, 469 U.S. at 63. The court finds, therefore, that Petitioner's Ground 1 is without merit and that it should be dismissed.

**Ground 2 - The trial court erred in failing to declare a mistrial after the prosecutor made references to Petitioner's failure to testify during closing argument:**

In support of Ground 2 Petitioner argues that the trial court abused its discretion in failing to grant a mistrial after the prosecutor stated, during closing argument, that Petitioner did not have an alibi defense and that this improper comment accentuated the fact that Petitioner had not testified.

During closing argument, the prosecutor told the jury that they are going to receive a separate set of verdict forms for Petitioner and then stated that Petitioner "does not have an alibi defense." At that point Petitioner's counsel objected and moved for a mistrial. The court then instructed the prosecutor that she could tell the jury that there is no alibi instruction if she phrased "it in such a way that [she] made it clear to [the jury] that this has to do with [the prosecutor's] explanation of the instructions and not a comment upon [Petitioner's] absolute right not to testify." The court overruled the objection of Petitioner's counsel and court instructed the jury to disregard the prosecutor's comment that Petitioner did not have an alibi defense. See Resp. Ex. A-4 at 827-830. Petitioner's counsel noted an ongoing objection which was overruled by the court. The prosecutor then argued to the jury as follows:

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

You will receive an alibi instruction for Latorrence Nelson. We will talk about that on my next half. You will not be receiving an alibi instruction on Samuel Reece. So, there's a charge in the first element which is that there is no specificity as approximately when, or on or about 6:20 p.m. the murder occurred. All right. That's the only difference in that one, because you are getting an alibi instruction from Latorrence Nelson but not Samuel Reece. Everything else is the same.

Resp. Ex. A-4, Tr. at 831.

Under federal law, to establish a violation of due process due to improper argument, a habeas petitioner must show that the prosecutor's remarks were so egregious that they fatally infected the proceedings and rendered Petitioner's entire trial fundamentally unfair. See Darden v. Wainwright, 477 U.S. 168, 181 (1986) (Darden); Moore v. Wyrick, 760 F.2d 884, 886 (8th Cir. 1985). See also Culkin v. Purkett, 45 F.3d 1229, 1235 (8th Cir. 1995); Pollard v. Delo, 28 F.3d 887, 890 (8th Cir. 1994). Petitioner can meet this burden only by showing that absent the prosecutor's statement, there is a reasonable probability that the jury would have returned a different verdict. See Crespo v. Armontrout, 818 F.2d 684, 687 (8th Cir. 1987). "'[T]he relevant question under federal law is whether the prosecutor's commends so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Mack v. Caspari, 92 F.3d 637, 643 (8th Cir. 1996) (quoting Darden, 477 U.S. at 181). As further said by the Supreme Court in Donnelly v. DeChristoforo, 416 U.S. 637, 646-47 (1974):

[C]losing arguments of counsel, are seldom carefully constructed before the event; improvisation frequently results in syntax left imperfect and meaning less than crystal clear. While these general observations in no way justify prosecutorial misconduct, they do suggest that a court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations.

Additionally, the Eighth Circuit has held:

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

This court has established a two-part test for reversible prosecutorial misconduct: (1) the prosecutor's remarks or conduct must have been improper, and (2) such remarks or conduct must have prejudicially affected the defendant's substantial rights so as to deprive the defendant of a fair trial. See United States v. McGuire, 45 F.3d 1177, 1189 (8th Cir.1995); United States v. Hernandez, 779 F.2d 456, 458 (8th Cir.1985). We employ the following three factors to determine the prejudicial effect of prosecutorial misconduct: "(1) the cumulative effect of such misconduct; (2) the strength of the properly admitted evidence of the defendant's guilt; and (3) the curative actions taken by the court." Hernandez, 779 F.2d at 460; see also United States v. Eldridge, 984 F.2d 943, 946-47 (8th Cir.1993).

United States v. Conrad, 320 F.3d. 851, 854 (8th Cir. 2003).

Under federal law "[t]he trial court has broad discretion in controlling the direction of opening statements and closing arguments." United States v. Johnson, 968 F.2d 768, 769 (8th Cir.1992). Indeed, under federal law a prosecutor may not comment adversely concerning a defendant's failure to testify.  See Griffin v. State of California, 380 U.S. 609, 615 (1963).  The Eighth Circuit has explained federal law in regard to prosecutorial comments regarding a defendant's failure to testify as follows:

Comments by a prosecutor on an accused's failure to take the stand violate the accused's fifth amendment right to remain silent. Griffin v. State of California, 380 U.S. 609, 615, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). Either direct or indirect references to defendant's choice not to testify may establish a constitutional violation. Indirect comments rise to the level of a constitutional violation if the statements either (1) manifest the prosecutor's intention to call attention to the defendant's failure to testify, or (2) are such that the jury would naturally and necessarily understand the comments as highlighting the defendant's failure to testify. Robinson v. Crist, 278 F.3d 862, 866 (8th Cir.2002); United States v. Smith, 266 F.3d 902, 906 (8th Cir.2001) (citations omitted). Prosecutorial comments must be reviewed in context, Graham, 212 F.3d at 439-40, and we will reverse only if the defendant shows both that the comments were improper and that they resulted in prejudice. Stringer v. Hedgepeth, 280 F.3d 826, 829-30 (8th Cir.2002).

Herrin v. United States, 349 F.3d 544, 546 (8th Cir. 2003).

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

To the extent that the prosecutor's comment during closing argument initially drew attention to Petitioner's failure to testify, the court notes that the trial court instructed the jury to disregard this comment. The prosecutor's rephrased comment as quoted above did not comment on Petitioner's failure to testify but rather explained the difference in the instructions given in regard to Petitioner and his co-defendant, Nelson. The rephrased argument did not manifest the prosecutor's intention to call attention to the defendant's failure to testify nor was it phrased in such a nature that the jury would have understood the comments as highlighting Petitioner's failure to testify. See Herrin, 349 F.3d at 546. Moreover, Petitioner has not suggested why the jury would have returned a different verdict if the trial court had not permitted the rephrased argument.

The Missouri appellate court affirmed the judgment of the trial court without comment. As such, arguably a pre-AEDPA standard is applicable to this court's review of Petitioner's Ground 2. See Brown, 344 F.3d at 785. To that extent, the court finds that Petitioner's constitutional rights were not violated by the prosecutor's comments during closing argument and that Ground 2 is without merit. To the extent that Williams is applicable the court finds that the trial court's rulings and the decision of the Missouri appellate court affirming those rulings in regard to the issue raised by Petitioner in Ground 2 are not contrary to federal law and that they are a reasonable interpretation of federal law. Moreover, the Missouri courts reasonably applied federal law to the facts of Petitioner's case. The court finds, therefore, that the issue raised in Petitioner's Ground 2 is without merit and that it should be dismissed.

**Ground 3 - Petitioner received ineffective assistance of trial counsel because his trial counsel failed to object to the submission of Jury Instruction #10 which varied from the indictment:**

The court has quoted above the holding of the Missouri appellate court in regard to Petitioner's allegation that "his counsel was ineffective for failing to object to Instruction #10, which he claims fatally varied from the indictment under which he was charged." Resp. Ex. I at 3. The

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Missouri appellate court concluded that "no fatal variance existed and any objection by counsel to the instruction would have been nonmeritiorious." Additionally, the Missouri appellate court held that Petitioner's counsel could not "be found ineffective for failing to make a nonmeritiorious objection." Id. (citing State v. Clay, 975 S.W.2d 121, 135 (Mo. banc 1998)).

This court has found above pursuant to its addressing Petitioner's Ground 1 that the submission of Jury Instruction #10 did not rise to the level of a constitutional violation. Under federal law an attorney's performance cannot be judged as constitutionally ineffective where the attorney fails to make a nonmeritiorious objection. Where an objection would be without merit, an attorney's failure to object cannot prejudice a criminal defendant. See Strickland, 466 U.S. at 687. As such, the court finds that the decision of the Missouri appellate court in regard to the issue of Petitioner's Ground 3 is not contrary to federal law and is a reasonable interpretation of federal law. Additionally, the Missouri appellate court's decision reasonably applied federal law to the facts of Petitioner's case.

**Ground 4- The motion court erred in denying Petitioner's post-conviction relief motion without a hearing regarding the issue raised in Ground 3:**

Petitioner alleges that the motion court erred in not granting him a hearing on his claim that he received ineffective assistance of counsel because his trial counsel failed to object to the submission of Jury Instruction #10, described above in regard to Petitioner's Ground 1. Under Missouri post-conviction relief procedures, "in order to be entitled to an evidentiary hearing, a movant must satisfy the procedural requirement that his petition allege facts, not conclusions, which if true would warrant relief." Smith v. Goose, 998 F.2d 1439 (8th Cir. 1993) (citing Rule 24.035(g); State v. Blankenship, 830 S.W.2d 1, 16 (Mo. 1992) (en banc)).

Section 2254 authorizes federal courts to review the constitutionality of a state criminal conviction, but does not authorize federal courts to review infirmities in state post-conviction relief proceedings. See Mitchell v. Wrick, 727 F.2d 773, 774 (8th Cir. 1984). Indeed, "infirmities in [a]

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

state's post-conviction remedy procedure cannot serve as a basis for setting aside a valid original conviction," because there is no federal constitutional requirement that states provide a means of post-conviction review of state convictions. <u>Williams v. State of Missouri</u>, 640 F.2d 140, 143-44 (8th Cir. 1981). Because Petitioner's claim that he was denied a hearing pursuant to the Missouri post-conviction proceedings is collateral to his conviction and detention, this claim is not cognizable pursuant to a § 2254 petition. <u>See Williams-Bey v. Trickey</u>, 894 F.2d 314, 317 (8th Cir. 1991). As such, the court finds that the issue raised by Petitioner in Ground 4 is without merit and that it should be dismissed.

## V.
## CONCLUSION

The court finds that Petitioner's Grounds 1-4 are without merit and that Petitioner's § 2254 Petition should be dismissed in its entirety. The undersigned further finds that the that the grounds asserted by Petitioner do not give rise to a any issues of constitutional magnitude. Because Petitioner has made no showing of a denial of a constitutional right, Petitioner should not be granted a certificate of appealability in this matter. <u>See Tiedeman v Benson</u>, 122 F.3d 518, 522 (8th Cir. 1997).

**Accordingly**,

**IT IS HEREBY RECOMMENDED** that the Petition filed by Petitioner for habeas corpus pursuant to 28 U.S.C. § 2254 be **DENIED**; [Doc. 4]

**IT IS FURTHER RECOMMENDED** that for the reasons stated herein, any motion by Petitioner for a certificate of appealability should be **DENIED**.

The parties are advised that Petitioner has eleven (11) days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an

26

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

extension of time for good cause is obtained, and that failure to file timely objections may result in

a waiver of the right to appeal questions of fact.  See Thompson v. Nix, 897 F.3d 356 (8th Cir. 1990).


/s/Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE

Dated this   8th   day of  June, 2005.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com